**JWB**

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Merdell Smith, | No. CV 07-1353-PHX-DGC (MEA) |
| Plaintiff, | **ORDER** |
| vs. | |
| James Arnold, et al., | |
| Defendants. | |

Plaintiff Merdell Smith brought this civil rights action under 42 U.S.C. § 1983 against the following Arizona Department of Corrections (ADC) Eyman Unit employees: Deputy Warden James Arnold, Assistant Deputy Warden Marsh, Special Security Unit Sergeant Carlson, and Special Security Unit Lieutenant Scott.[1]  Before the Court is Defendants' Motion for Summary Judgment (Doc. # 28).  Plaintiff has not responded to the motion.  The Court will grant Defendants' motion and terminate the action.

**I.   Background and Procedural History**

Plaintiff's claims arose from his incarceration at the ADC's Eyman Unit.  In his Complaint, Plaintiff presented the following background facts: he was moved from general population to the Violence Control Unit (VCU) on April 27, 2007 (Doc. # 1 at 5).  The move caused Plaintiff to lose privileges including access to a television, a radio/cassette player, headphones, a fan, an electric shaver, musical and correspondence tapes, telephone calls, full canteen, and the ability to participate in "fund raisers" (id.).  Plaintiff also claimed that the

---

[1] Complex Deputy Warden Robert Stewart was dismissed upon screening (Doc. # 3).

conditions in his VCU cell constituted "atypical and significant hardships." Specifically, Plaintiff claimed that his VCU cell had restricted air flow and soaring temperatures, with the only vent blowing "hot, fetid air" into the cell (id. at 6). He further asserted that diesel fumes were vented into his cell, causing nausea, dizziness, chest pains, and continuous migraines (id.).

Based on these facts, Plaintiff presented two claims for relief. In Count I, Plaintiff alleged that his transfer to VCU, resulting in the loss of privileges, violated his due process rights. He claimed that the VCU Committee, consisting of Arnold, Marsh, Scott, and Carlson, had its own policy, practice, or custom of sentencing prisoners to VCU for 90-180 days, which is greater than ADC policy allows. He further alleged that his placement in VCU is non-grievable (id. at 5-11). In Count II, Plaintiff claimed that Scott, Marsh, Arnold, and Carson further violated Plaintiff's due process rights—as members of the VCU Committee—by meeting weekly or monthly to decide which inmates should remain in VCU without providing written notice or other due process protections (id. at 12-13).[2]

Defendants now move for summary judgment, arguing that: (1) Defendants did not violate Plaintiff's due process rights because the conditions in VCU were not atypical or significant; (2) Scott and Carlson were not personally involved in any alleged constitutional violation; (3) the Eleventh Amendment bars monetary damages against Defendants in their official capacity; and (4) Defendants are entitled to qualified immunity (Doc. # 28). In support of their motion, Defendants submitted a separate Statement of Facts (Doc. # 29); a copy of Plaintiff's Inmate Record (id., Ex. A); the declarations of James Arnold, John Amos, Ronald Carlson, Travis Scott, and Jacqueline Marsh (id., Exs B-F, Attachs.).

The Court issued an Order informing Plaintiff of his obligation to respond to the motion (Doc. # 30).[3] Plaintiff sought and was granted additional time to respond to Defendants' motion (Doc. ## 31, 33). Plaintiff failed to file a response.

---

[2] Count III was dismissed for failure to state a claim (Doc. # 3 at 3).

[3] Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998).

## II. Summary Judgment Standard

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). However, Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

1  if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the
2  evidence and determine the truth but to determine whether there is a genuine issue for trial.
3  Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all
4  justifiable inferences are to be drawn in his favor." Id. at 255. But, if the evidence of the
5  non-moving party is merely colorable or is not significantly probative, summary judgment
6  may be granted. Id. at 249-50.

**III.    Due Process in Disciplinary Proceedings**

Plaintiff presents two counts alleging violations of his due process rights by his transfer to and 130-day placement in VCU. Consequently, the Court must first determine whether Plaintiff was entitled to any due process, and if so, whether he was denied any constitutionally-required procedural safeguards. Liberty interests which entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (internal citations omitted).

In analyzing whether the hardship is atypical and significant, three guideposts to consider are: (1) the conditions of confinement; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the sanction will affect the duration of the prisoner's sentence. Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003); Keenan v. Hall, 83 F.3d 1083, 1088-89 (9th Cir. 1996), op. amended, 135 F.3d 1318 (1998). "Atypicality" requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. See Carlo v. City of Chino, 105 F.3d 493, 499 (9th Cir. 1997). See, e.g., Sandin, 515 U.S. at 472 (30 days disciplinary segregation is not atypical and significant); Torres v. Fauver, 292 F.3d 141, 151 (3d Cir. 2002) (4 months in administrative segregation is not atypical and significant); Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (2 ½ years of administrative segregation is not atypical and significant); Griffin v. Vaughn, 112 F.3d 703, 706-708 (3d Cir.1997) (15 months administrative segregation is not atypical and

significant); Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997) (6 months of confinement in especially disgusting conditions that were "more burdensome than those imposed on the general prison population were not atypical ... in relation to the ordinary incidents of prison life."); Jacks v. Crabtree, 114 F.3d 983 (9th Cir. 1997) (denial of year sentence reduction is not an atypical and significant hardship). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976). Therefore, to determine whether an inmate is entitled to the procedural protections afforded by the Due Process Clause, the Court must look to the particular restrictions imposed and ask whether they "'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'" Mujahid v. Meyer, 59 F.3d 931, 932 (9th Cir. 1995) (quoting Sandin, 515 U.S. at 486).

In their motion, Defendants submit evidence that inmates housed in VCU received the same meals, visitation privileges, recreation time, and shower privileges as other inmates in Special Management Unit (SMU) I general population (Defs' Statement of Facts (DSOF) ¶ 11).[4] Further, Defendants state that the physical layout of the cells in SMU and VCU was identical, as were the lighting and ventilation systems (id. ¶ 13). Finally, Defendants presented evidence that there are no diesel sources located at or around any air handlers, precluding the possibility that diesel fumes could be vented into VCU cells (id. ¶ 18). As a result, Defendants contend that Plaintiff's placement in VCU for 130 days did not present an atypical and significant hardship triggering due process protections.

On this record, Defendants have met their initial burden to present the basis of their motion and identify portions of the record that show an absence of a genuine issue of material fact. The burden now shifts to Plaintiff to present specific facts that a genuine issue exists. Fed. R. Civ. P. 56(e). Plaintiff did not respond to Defendants' motion. But because

---

[4] Plaintiff was housed in SMU I general population before his transfer to VCU and Plaintiff has not challenged the conditions of confinement in SMU I.

- 5 -

1  a verified complaint may be used as an affidavit opposing summary judgment if it is based
2  on personal knowledge and sets forth specific facts admissible in evidence, the Court will
3  consider the allegations set forth in Plaintiff's Complaint. Schroeder v. McDonald, 55 F.3d
4  454, 460 (9th Cir. 1995).

5  In his Complaint, Plaintiff claimed that his property was restricted while in VCU and
6  that his cell had restricted air flow and soaring temperatures, with the only vent blowing "hot,
7  fetid air" into the cell (Doc. # 1 at 6). He further asserted that diesel fumes were vented into
8  his cell, causing nausea, dizziness, chest pains, and continuous migraines (id.).

9  In comparing Plaintiff's 130 days in VCU to the precedent cited above, the Court
10 concludes that Plaintiff's confinement was not atypical and significant. Plaintiff offers
11 nothing to refute Defendants' evidence that the ventilation system in SMU provides air to all
12 SMU I clusters, including VCU. Moreover, Plaintiff does not counter Defendants' evidence
13 that the air temperature is regulated the same for every SMU I cluster and that at times when
14 dew point temperatures are high, the evaporative cooler is less efficient, causing higher
15 temperatures. As a result, the Court finds that any occasional high temperatures in VCU are
16 not atypical and significant compared to the general conditions in SMU I. Indeed, the
17 evidence reflects that the conditions in SMU I and VCU are similar with the exception of the
18 restriction on property.

19 Similarly, the Court finds that any restrictions on property are not so different from
20 SMU I to create an atypical and significant hardship. In failing to respond to Defendants'
21 motion, Plaintiff does not dispute that he was still permitted to possess various types of
22 personal property including clothing, writing materials, linens, one legal box, and SMU I
23 authorized hygiene items. The Court therefore finds that a restriction on possessing a
24 television, a radio/cassette player, headphones, a fan, an electric shaver, and tapes does not
25 rise to the level of a significant and atypical hardship that creates a liberty interest. More
26 importantly, there is no dispute that the 130 days in VCU does not affect Plaintiff's sentence
27 and the other conditions of confinement are identical to SMU I. Compare Wilkinson v.
28 Austin, 545 U.S. 209 (2005) (determining that a liberty interest is implicated by placement

1  in a cell with almost no human contact, twenty-four lighting, and exercise for only one hour
2  per day, particularly where the placement is of infinite duration and results in disqualification
3  of an otherwise eligible inmate for parole). Without more, Plaintiff has not established any
4  entitlement to due process protection for his placement in VCU. Defendants are therefore
5  entitled to summary judgment on Plaintiff's due process claims in Counts I and II.

6  Because the Court has determined that Plaintiff was not entitled to due process, it need
7  not reach Defendants' remaining contentions.

8  **IT IS ORDERED:**

9  1. Defendants' Motion for Summary Judgment (Doc. # 28) is **granted**.

10  2. This action is dismissed with prejudice. The Clerk of Court is directed to enter
11  judgment accordingly.

12  DATED this 22nd day of December, 2008.

_____
David G. Campbell
United States District Judge